IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| GANNON INTERNATIONAL LTD. ) | |
| ) | |
| **Plaintiff**, ) | |
| ) | |
| v. ) | Case No. 4:10-cv-00835 |
| ) | |
| WALTER BLOCKER, et al. ) | JURY TRIAL DEMANDED |
| ) | |
| **Defendants.** ) | |

**MEMORANDUM OF LAW IN SUPPORT OF**
**PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

COMES NOW, Plaintiff, Gannon International Ltd. ("Gannon International") and files this Memorandum of Law in support of its Motion for Preliminary Injunction and would show this court as follows.

On May 6, 2010, Gannon International filed suit against the Defendants Walter Blocker ("Blocker"), Ignition Capital Partners ("Ignition Capital"), and Sandalwood Investments Limited ("Sandalwood Investments"). The Verified Complaint for Injunctive and Other Relief is incorporated by reference herein. On May 7, 2010, the Court granted Gannon International's Emergency Application for Temporary Restraining Order and set a Preliminary Injunction hearing for May 17, 2010. Gannon International's request for a Preliminary Injunction should be granted because Gannon International has no adequate remedy at law and will suffer irreparable harm in the absence of the requested relief, and because each of the factors utilized in weighing such relief counsel strongly toward granting the requested relief.

**I.      Legal Standard**

"The primary function of a preliminary injunction is to preserve the status quo until, upon final hearing, a court may grant full, effective relief." Kansas City Southern Trans. Co., Inc. v.

Teamsters Local Union # 41, 126 F.3d 1059, 1065 (8th Cir. 1997).  Preliminary injunctions and TROs pursuant to Rule 65 of the Federal Rules of Civil Procedure are only appropriate where the party seeking the relief has no adequate remedy at law.  In the Eighth Circuit, the relevant factors to be considered by a district court are: (1) the probability of success on the merits; (2) the threat of irreparable harm to the movant; (3) the balance between this harm and the injury that granting the injunction will inflict on the other interested parties; and (4) whether the issuance of an injunction is in the public interest.  Dataphase Systems, Inc. v. CL Systems, Inc., 640 F.2d 109, 114 (8th Cir. 1981); see also Entergy, Arkansas, Inc. v. Nebraska, 210 F.3d 887, 898 (8th Cir. 2000).

The Dataphase factors "are not a rigid formula" and "[t]he basis of injunctive relief in the federal courts has always been irreparable harm and inadequacy of legal remedies."  Branstad v. Glickman, 118 F.Supp.2d 925, 938 (N.D.Iowa 2000), citing Beacon Theatres, Inc. v. Westover, 359 U.S. 500, 506-07 (1959).  No one factor is dispositive of a request for injunction, and the Court considers all of the factors and decides whether "on balance, they weigh towards granting the injunction."  Baker Elec. Co-Op, Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994), quoting Calvin Klein Cosmetics Corp. v. Lenox Lab., 815 F.2d 500, 503 (8th Cir. 1987).  The burden of establishing that preliminary relief is warranted is on the party seeking the injunction.  Baker Elec., 28 F.3d at 1472.

In this case, each of the Dataphase factors counsel toward granting the requested Preliminary Injunction.

**II.     Gannon International is Likely to Succeed on the Merits of its Claims**

At the preliminary injunction stage of litigation, the plaintiff need only demonstrate – not prove – some likelihood that it will ultimately prevail on its claims.  See  Hearts Daycare, II,

LLC v. , 2010 WL 427766, at *3 (E.D.Mo Feb. 1, 2010) ("At this stage in the proceeding, the court does not decide whether the movant will ultimately win, nor must the movant prove a greater-than-fifty-percent likelihood of success."), citing Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 371 (8th Cir. 1991) and Dataphase, 640 F.2d at 113.

Even at this early stage of the litigation, Gannon International has gathered evidence which demonstrates that it is likely to succeed on the merits of its claims. In addition to the evidence discussed herein, further evidence will be presented at the hearing on this Motion. Each of the claims set forth in the Verified Complaint is discussed below.

### A. Breach of Fiduciary Duties

Gannon International has pled a claim of breach of fiduciary duties against Blocker. The elements of a cause of action for breach of fiduciary duty under Missouri law are: "(1) the existence of a fiduciary relationship between the parties, (2) a breach of the fiduciary duty, (3) causation, and (4) harm." Bunzl Distrib. USA, Inc. v. Schultz, 2006 WL 3694634 (E.D.Mo. Dec. 13, 2006), citing Grewell v. State Farm Mut. Auto. Ins. Co., 162 S.W.3d 503, 508 (Mo.Ct.App.2005); see also  Family Legacy Chapels, Inc. v. National Heritage Enterprises, Inc., 2009  2391769, at *3 (W.D.Mo. Aug. 3, 2009) (holding that a claim for breach of fiduciary duties requires the existence of a fiduciary duty), citing Robert T. McLean Irrevocable Trust v. Patrick Davis, P. C., 283 S.W.3d 786 (Mo.Ct.App. 2009).

A common law fiduciary relationship exists when, for example, "things of value such as land, monies, a business, or other things of value which are the property of the subservient person [are] possessed or managed by the dominant party" or "the subservient party places a trust and confidence in the dominant party." Speaks, 2009 WL 2391769, at *3, quoting Emerick v. Mut. Benefit Life Ins. Co., 756 S.W.2d 513, 526-27 (Mo.1988) (en banc). A fiduciary duty

can also be found in agent-principal relationships. Id., citing State ex rel. Bunting v. Koehr, 865 S.W.2d 351, 353 (Mo.1993) (en banc). "The common thread elevating each of these relationships to the level of a fiduciary relationship is the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former." Id., citing A.G. Edwards, 978 S.W.2d at 394, State Sec. Ins. Co. v. Frank B. Hall & Co., 630 N.E.2d 940, 945 (Ill.App.Ct.1994), and Shervin v. Huntleigh Sec. Corp., 85 S.W.3d 737, 741 (Mo.Ct.App.2002) ("In looking for a fiduciary relationship, equity . . . . will look for those instances where a special confidence is reposed on one side with a resulting influence on the other.").

In this case, Blocker owed a fiduciary duty to Gannon International because he managed Gannon International's subsidiaries in Vietnam as Gannon International's employee and agent. The degree of trust and confidence that Gannon International placed in Blocker was necessarily heightened because Blocker was tasked to manage subsidiary companies which are several thousand miles and several time zones away from Gannon International's headquarters. Indeed, Gannon International was compelled to place special confidence in Blocker in part because of the special difficulties inherent in managing subsidiaries on the other side of the world from Gannon International. For years, Blocker acted in such a way that justified Gannon International's reliance on his faithful services.

The evidence will show that as early as February 2, 2010, Blocker and Gannon International's former Chief Financial Officer schemed to injure Gannon International. See Exhibit 1. From there, Blocker schemed to sell a controlling interest in Gannon Brewery Joint Stock Company to Ignition Capital and its affiliate, Sandalwood Investments without the authorization or knowledge of Gannon International. As far as Gannon International knew, these

entities had withdrawn from their interest in Gannon Brewery Joint Stock Company when they terminated their Letter of Intent with Gannon International and its subsidiaries on April 2, 2010. See Exhibit 6.  In reality, Ignition Capital and Sandalwood Investments continued to work secretly with Blocker to consummate an unauthorized Shareholder Agreement for the purchase of Gannon Brewery Joint Stock Company.  This unauthorized transaction apparently took place on April 19, 2010.  See Exhibit 3.

When this scheme was revealed in the Capital Call letter of May 5, 2010, Gannon International immediately protested and demanded that Blocker, Ignition Capital, and Sandalwood Investments produce the corporate documents under which they claimed to act.  See Exhibit 5.  Gannon International repeated its requests for documents in subsequent correspondence.  See Exhibits 8, 9.  To date, Defendants have refused to produce the requested documents to Gannon International.

Having demonstrated the existence of a fiduciary relationship between Blocker and Gannon International, it is clear that Blocker breached those fiduciary duties by, *inter alia*, wrongfully transferring The Gannon Company (Hong Kong) Ltd. funds to his wife and to Gannon International's former Chief Financial Officer by wire transfer for no legitimate business purpose, by interfering or threatening to interfere in the contractual and business relationships of Gannon International and its subsidiaries, by refusing to allow Gannon International access to the books and records of The Gannon Company (Hong Kong) Ltd. and Gannon Vietnam Co., Ltd., by attempting to involuntarily dilute Gannon International's interest in Gannon Brewery Joint Stock Company, and by committing knowing fraud and deceit upon Gannon International through the Capital Call letter and the transactions associated with it.  Gannon International is likely to succeed on this claim.

## B. Inducement of Breach of Fiduciary Duties

Gannon International has pled a claim for inducement of breach of fiduciary duties against Ignition Capital and Sandalwood Investments. As set forth above, Gannon International is likely to prevail on its claim that Blocker breached his fiduciary duties and his duty of loyalty to Gannon International and its subsidiaries. The claim for inducement of this breach against Ignition Capital and Sandalwood Investments is likely to succeed because these parties have aided, abetted, and participated in Blocker's breach of his fiduciary duties and his duty of loyalty to Gannon International through their participation in the illegal and tortious May 5, 2010 Capital Call letter; their participation in Blocker's attempt to illegally and tortiously divest Gannon International of its investment in Gannon Brewery Joint Stock Company; their participation in Blocker's refusal to provide access to the corporate books and records of The Gannon Company (Hong Kong) Ltd., Gannon Vietnam Limited Company, and Gannon Brewery Joint Stock Company; and the impending involuntary dilution of Gannon International's interest in Gannon Brewery Joint Stock Company. These parties acted in bad faith when they terminated their Letter of Intent with Gannon International on April 2, 2010, and then apparently consummated a Shareholder Agreement with Blocker on April 19, 2010.

Moreover, the evidence will show that Ignition Capital and Sandalwood Investments have ignored or rebuffed repeated requests by Gannon International for the corporate documents referenced above, thus demonstrating a lack of good faith. The breaches of the fiduciary duties and duty of loyalty owed by Blocker to Gannon International have caused Gannon International actual harm and threaten irreparable harm, and have been aided, abetted, and participated in by Ignition Capital and Sandalwood Investments. Gannon International is likely to succeed on the

merits of this claim, and will benefit from an expedited discovery schedule to compel the production of these documents.

### C. Tortious Interference with Business Relationships

Gannon International has pled a claim for tortious interference with business relationships against Blocker, Ignition Capital, and Sandalwood Investments. Under Missouri law, a claim of tortious interference with a contract or business expectancy requires proof of: "(1) a contract or business expectancy; (2) defendant's knowledge of the contract or relationship; (3) a breach induced or caused by defendant's intentional interference; (4) absence of justification; and (5) damages." Icke v. Adams, 2008 WL 4938413, at *11 (E.D.Mo. Nov. 14, 2008), quoting Nazeri v. Mo. Valley Coll., 860 S.W.2d 303, 316 (Mo.1993).

In this case, the evidence will show that Blocker, Ignition Capital, and Sandalwood Investments all had knowledge of the business relationships between Gannon International and its subsidiaries and certain prospective investors in Gannon International's efforts to build a brewery in Vietnam. Blocker, Ignition Capital, and Sandalwood Investments also had knowledge of Gannon International's expectancy that it would maintain its business relationship with these prospective investors, and had knowledge of the fact that Gannon International has invested substantial resources in developing and maintaining those relationships. Yet, despite having knowledge of these business relationships, Blocker, Ignition Capital, and Sandalwood Investments tortiously interfered with such business relationships, without justification or excuse, in that they proceeded with a Shareholder Agreement that was unauthorized and unwanted by Gannon International. This transaction interfered with and potentially destroyed Gannon International's efforts to bring in approved investors.

Further, upon information and belief, Blocker intends to further tortiously interfere with Gannon's contractual and business relationships, in a manner both willful and intentional, without justification or excuse. As a result of the actions of Blocker, Ignition Capital, and Sandalwood Investments, Gannon International has been injured and faces irreparable injury. Indeed, Gannon International is threatened with losing or has lost its business partners, investors, income and/or goodwill. Gannon International is likely to succeed on the merits of this claim.

### D. Fraud in the Wire Transfer of Money

Gannon International has alleged fraud against Blocker for unauthorized transfers of money from a Gannon International subsidiary which served no legitimate business purpose. "The requirements for proving fraudulent misrepresentation are: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of the falsity or his ignorance of its truth; (5) the speaker's intent that his representation should be acted upon by the hearer and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the trust of the representation; (8) the hearer's right to rely thereon; (9) the hearer's consequent and proximately caused injury." Icke v. Adams, 2008 WL 4938413, at *14 (E.D.Mo. Nov. 14, 2008), citing Clark v. Olson, 726 S.W.2d 718, 719 (Mo.1987) (en banc).

At the hearing on this Motion, Gannon International will offer direct evidence in support of each of these elements. The evidence will show that when questioned by Gannon International about these transfers, Blocker claimed that the transfers were for legitimate business purposes. Such claims were later discovered to be false and material, and Blocker knew of the falsity at the time he made the representations. Blocker intended that Gannon International would rely on his false representations because he wanted Gannon International to drop its investigation of the transfers. Gannon International and its employees were ignorant of

the falsity of Blocker's claims at the time the claims were made, relied on the misrepresentations being true until their investigation revealed otherwise, and had a right to rely on Blocker's representations regarding the expenditures and transfers of money to and from The Gannon Company (Hong Kong) Ltd. The evidence will also show that Blocker demanded Gannon International drop its investigation into the wire transfers in exchange for Blocker agreeing to provide access to the books and records of The Gannon Company (Hong Kong) Ltd. and Gannon Vietnam Co., Ltd. – a demand which Gannon International refused.

The allegations set forth in the Verified Complaint, coupled with the affidavit of Michelle Sinn that is attached to the Complaint and the evidence to be presented at the hearing on this Motion, demonstrate a likelihood that Gannon International will prevail on this claim of fraud.

### E.  Unjust Enrichment

Gannon International has set forth a claim of unjust enrichment against Blocker stemming from the unauthorized transfers of money from a Gannon International subsidiary described in the Verified Complaint. "In order to prevail on an unjust enrichment claim, Plaintiffs must establish: (1) a benefit conferred upon the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; and (3) acceptance and retention of the benefit under such circumstances that it would be inequitable for defendant to retain the benefit without paying the value thereof." Icke v. Adams, 2008 WL 4938413, at *10 (E.D.Mo. Nov. 14, 2008), citing Graves v. Berkowitz, 15 S.W .3d 59, 61 (Mo.Ct.App.2000).

Here, the diversion by Blocker of $415,000 from The Gannon Company (Hong Kong) Ltd. into his wife's personal bank account for no legitimate business purpose constitutes a benefit conferred upon Blocker by Gannon International and its subsidiaries. Blocker appreciated the benefit of the fact that he had diverted $415,000 of Gannon International's

money into his wife's personal bank account, and it would clearly be inequitable for Blocker to accept and retain the benefit conferred by the transfer of $415,000 from The Gannon Company (Hong Kong) Ltd. into his wife's personal bank account without paying the value thereof in that the transfer of such funds had no legitimate business purpose.

Gannon International is likely to succeed on the merits of this claim for unjust enrichment stemming from this unauthorized wire transfer.

### F. Conversion

Gannon International has also alleged a cause of action for conversion against Blocker stemming from the unauthorized wire transfers. Conversion is defined as "the unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights." Icke v. Adams, 2008 WL 4938413, at *10 (E.D.Mo. Nov. 14, 2008), citing Gen. Elec. Capital Corp. v. Union Planters Bank, N.A., 409 F.3d 1049, 1053-54 (8th Cir. 2005) and Bell v. Lafont Auto Sales, 85 S.W.3d 50, 54 (Mo.Ct.App. 2002). Conversion may be proved "(1) by showing a tortious taking; (2) a use or appropriation by the defendant indicating a claim or right in opposition to the owner; or (3) a defendant's refusal to give up possession on demand." Id., citing Kennedy v. Fournie, 898 S.W.2d 672, 678 (Mo.Ct.App. 1995). Regardless of which method of proof is used, the party asserting conversion "must show it had title to, or a right of property in, and a right to the immediate possession of the property concerned at the alleged date of conversion." Id. (emphasis omitted).

While conversion is often limited to the realm of personal property, Missouri courts have found it to be a viable cause of action when money is the subject of conversion. See Adams, 2008 WL 4938413, at *10 ("Intentionally spending money that rightfully belongs to another individual certainly establishes that the person is attempting to assert a claim in opposition to the

true owner's rights."). Moreover, Missouri law includes a "narrow exception" to the general rule that conversion does not apply to claims involving money where "the plaintiff delivers funds to the defendant for a specific purpose only to have the defendant divert those funds to another and different purpose of the defendant." Express Scripts, Inc. v. Walgreen Co., 2009 WL 4574198, at *4 (E.D.Mo. Dec. 3, 2009).

In this case, Gannon International placed the sums of $415,000 and $40,000 into the account of The Gannon Company (Hong Kong) Ltd. for the specific purpose of funding the operations of The Gannon Company (Hong Kong) Ltd. and for other legitimate business expenditures. Blocker was tasked with the management of this subsidiary of Gannon International, and at no time did Blocker have the right to ownership of the $415,000 or the $40,000. The diversion by Blocker of $415,000 from The Gannon Company (Hong Kong) Ltd. into his wife's personal bank account for no legitimate business purpose, and the diversion by Blocker of $40,000 into the personal bank account of the former Chief Financial Officer of Gannon International, constitute conversion in that they were tortious takings and were for a different purpose than Gannon International intended. Gannon International is likely to succeed on this claim as well.

### G. Fraud in the Capital Call

Gannon International has alleged fraud against Blocker for deceiving Gannon International in the course of the May 5, 2010 Capital Call and related transactions. The elements of fraud are set forth above. Gannon International is likely to succeed on this claim of fraud against Blocker because Blocker knew that he had resigned from Gannon Vietnam Co., Ltd. on April 29, 2010, and Gannon International accepted his resignation that same day. See Exhibits 2, 7. Yet, as of May 5, 2010, Blocker still claimed that he served in that capacity and

possessed the authority of that position. While the Capital Call letter of May 5, 2010 references "a written resolution of the board of management of the Company dated 4 May 2010", such a resolution would be impossible in light of Blocker's resignation from Gannon Vietnam Co., Ltd. on April 29, 2010. Blocker's participation in a shareholder resolution after he communicated his resignation to Gannon International constitutes a fraud on Gannon International. And, Blocker's continued interaction with Ignition Capital and Sandalwood Investments, after those parties had terminated their Letter of Intent with Gannon International, was done with the express purpose of deceiving and defrauding Gannon International.

Moreover, Blocker participated in and agreed to the Capital Call even though he knew that Gannon International has never been provided with the Share Subscription, the Shareholder Agreement of April 19, 2010, the Corporate Charter, the written resolution of May 4, 2010, the "Schedule" or even the amount of the Capital Call referenced in the May 5, 2010 letter. Blocker acted with actual knowledge and intent to deceive and defraud Gannon International in the course of causing the Capital Call, and throughout the allegations described above. Gannon International will present other direct evidence of this claim at the hearing on this Motion, and Gannon International is likely to succeed on the merits of this claim.

### H. Violation of Section 10(b) of the Securities and Exchange Act of 1934

Gannon International has pled a claim for violation of Section 10(b) of the Securities and Exchange Act of 1934 against Blocker. Section 10(b) of the Exchange Act prohibits the use of any "manipulative or deceptive device or contrivance" in connection with the purchase or sale of a security. 15 U.S.C. § 78j(b); see S.E.C. v. Shanahan, 2008 WL 5211978, at *4 (E.D.Mo. Dec. 12, 2008). Rule 10b-5, which is promulgated by the SEC under Section 10(b), states that "[i]t shall be unlawful for any person, directly or indirectly, by the use of any means or

instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange, (a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." 17 C.F.R. § 240.10b-5.

"To successfully state a securities fraud claim under Rule 10b-5, a plaintiff must show the following: (1) a misstatement or omission; (2) of a material fact; (3) made with scienter; (4) on which the plaintiff justifiably relied; (5) that proximately caused the plaintiff's injury." Shanahan, 2008 WL 5211978, at *4, citing .E.C. v. Thielbar, 2007 WL 2903948, at *5 (D.S.D. Sep. 28, 2007). "While scienter is not explicitly mentioned in the statutory text, it is an essential element of a § 10b-5 or Rule 10b-5 claim." Id. (citation omitted). "Scienter is defined as the intent to deceive, manipulate, or defraud, and allegations of recklessness may satisfy the standard." Id., citing Kushner v. Beverly Enterprises, Inc., 317 F.3d 820, 827 (8th Cir. 2003); S.E.C. v. Guenthner, 212 F.R.D. at 533.

A prima facie case for violation of Section 10(b) is demonstrated in the few emails and documents already offered as exhibits in this matter. In Exhibit 2, Blocker states that he resigns from Gannon International's Vietnam subsidiary. Gannon International accepted and relied upon Blocker's resignation. See Exhibit 7. Subsequently, in Exhibit 3, reference is made to a May 4, 2010 written resolution of the board of management of Gannon Brewery Joint Stock Company, which Blocker was not authorized to participate in, especially in light of his resignation. Blocker's purported resignation on April 29, 2010, followed by his actions on May 4, 2010 in

claiming the authority to act on behalf of Gannon Vietnam Co. Ltd., constitute a fraud on Gannon International. The fraud committed by Blocker in connection with the May 5, 2010 Capital Call letter was in connection with the purchase or sale of a security because it directly involves the shares of Gannon Brewery Joint Stock Company. Gannon International is likely to succeed on this claim.

In summary, Gannon International is likely to prevail on all of the claims asserted in the Verified Complaint, and this factor weighs heavily toward issuing the requested Preliminary Injunction.

### III. Gannon International Will Suffer Irreparable Harm in the Absence of the Requested Injunctive Relief

Gannon International has demonstrated that it will suffer irreparable harm in the absence of the requested injunctive relief. The Eighth Circuit has consistently held that irreparable harm occurs when a party has no adequate remedy at law, typically because its injuries cannot be fully compensated through an award of damages. General Motors Corp v. Harry Brown's, LLC, 2009 WL 1011504, *5 (8th Cir. Apr. 16, 2009). An irreparable injury is an injury "of such a nature that money damages alone do not provide adequate relief." Hinz v. Neuroscience, Inc., 538 F.3d 979, 986 (8th Cir. 2008). If money damages will adequately compensate plaintiffs for their injury, injunctive relief is not appropriate. See Kelly v. Golden, 352 F.3d 344, 353 (8th Cir. 2003).

As set forth in the Verified Complaint, Gannon International is in very real and immediate risk of losing its business unit in Vietnam completely if Defendants are not enjoined in the manner requested. The loss or destruction of a business constitutes irreparable harm. See, e.g., Tom Doherty Assoc., Inc. v. Saban Entmt. Inc., 60 F.3d 27, 37 (2d Cir. 1995) ("We have found irreparable harm where a party is threatened with the loss of a business."); see also Buffalo

Courier-Express, Inc. v. Buffalo Evening News, Inc., 601 F.2d 48, 58 (2d Cir. 1979) (holding that risk that the party seeking the preliminary injunction will have its business destroyed *pendente lite* demonstrates a balance of hardships in favor of the moving party).

Even if the Court were to find that the loss alleged by Gannon International is recoverable by money damages, the Eighth Circuit has held that "[r]ecoverable monetary loss may constitute irreparable harm" in cases "where the loss threatens the very existence of the [petitioner]'s business."  Elevator v. I.C.C., F.2d 112, 115 (8th Cir. 1986).  Such is the case here, as Defendants have demonstrated their intention to destroy Gannon International's business in Vietnam through an improper, unauthorized, and tortious capital call and other means.

Moreover, Gannon International will suffer extrinsic damage such as the loss of goodwill and injury to business reputation – damages which are impossible to calculate.  These losses are in addition to the money damages that Gannon International will suffer if Defendants are not enjoined.  Such extrinsic forms of damage constitute irreparable harm worthy of injunctive relief in that they are injuries separate and apart from money damages.  See  v. City of Troy, Mo., 2008 WL 4368155, at *5 (E.D.Mo. Sep. 18, 2008), citing  Inc. v. Lewis, 346 F.3d 841, 846 (8th Cir. 2003); see also Medtronic, Inc. v. Gibbons, 684 F.2d 565, 566 (8th Cir. 1982).  This factor counsels toward the issuance of the requested injunctive relief.

**IV.     The Balance of the Harm to Gannon International Against the Harm to Defendants Weighs in Favor of the Requested Injunctive Relief**

Gannon International should be granted a preliminary injunction because it is threatened by harm which significantly outweighs any potential harm to Defendants when the injunction issues.  In fact, Defendants are unlikely to suffer any harm by the proposed injunction. Defendants are merely asked to refrain from taking unauthorized corporate actions, to refrain from interfering with appropriate corporate audits, and to refrain from destroying corporate

books and records. Gannon International, by contrast, is at immediate risk of irreparable and grave harm in the absence of the injunction. Gannon International stands to lose its entire business in Vietnam if the requested preliminary injunction does not issue. The balance of the grave harm to Gannon International against the minimal, if not nonexistent, harm to Defendants counsels strongly toward the issuance of the preliminary injunction.

Indeed, the only harm that could reasonably be attributed to Defendants under the requested injunction is monetary. Missouri courts have held that when the harm threatened to the party to be enjoined is purely monetary harm, it is outweighed by the threat of irreparable harm to the plaintiff when such irreparable harm is demonstrated. Productions, LLC v. Zephyr Grafix, Inc., WL 1837711, at *6 (E.D.Mo. May 4, 2010).

Moreover, the facts of this case demonstrate that any injury Defendants could potentially suffer is of their own making. In such circumstances, the potential injury to Defendants should be even further discounted. , e.g., Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharma., Co., 290 F.3d 578, 596 (3d Cir. 2002) ("[T]he injury a defendant might suffer if an injunction were imposed may be discounted by the fact that the defendant brought that injury upon itself."); see also Johnson & Johnson-Merck Consumer Pharma. Co. v. Procter & Gamble Co., 285 F.Supp.2d 389, 394 (S.D.N.Y.2003) (noting no real hardship to defendant resulting from injunction other than loss of money from activity "it probably should not have engaged in to begin with").

This factor weighs heavily in favor of granting Gannon International's request for a preservation of the status quo in the form of a preliminary injunction.

## V. The Issuance of This Injunction is in the Public Interest

The relief requested by Gannon International in this Motion serves the public interest. Protecting corporations from tortious conduct and fraud is clearly in the public interest, in that it promotes investor confidence in the marketplace and reassures investors that their investments will be protected. See v. INBEV SA/NV, 2008 WL 4965859, at *6 (E.D.Mo. Nov. 18, 2008) ("The Court has a strong interest in preserving free operation of the nation's markets and insuring that it does not unduly restrain free enterprise."), citing .T.C. v. Tenet Health Care Corp., F.3d 1045, 1055 (8th Cir. 1999). The injunctive relief requested in this Motion is narrowly tailored to preserve these interests of preserving free operation of the markets and protection free enterprise. This factor counsels in favor of the requested injunctive relief.

## VI. Assignment of Bond

Gannon International has secured the Court's Temporary Restraining Order by depositing a bond in the amount of ten thousand dollars ($10,000.00) with the Clerk of the Court. Gannon International requests that the bond assigned to secure this Preliminary Injunction remain at ten thousand dollars ($10,000.00). This sum bears a rational relationship to Defendants' damages in the event it is later determined that the injunction was improvidently entered. See In re President Casinos, Inc., 360 B.R. 262, 266 (8th Cir. 2007).

## Conclusion

Gannon International's request for a Preliminary Injunction should be granted because Gannon International has no adequate remedy at law and will suffer irreparable harm in the absence of the requested relief, and because each of the Dataphase factors utilized in weighing such relief counsel strongly toward granting the requested relief.

**Dated:** May 12, 2010                             Respectfully submitted,

                                            **DOWD BENNETT LLP**

                                            By: /s/ Edward L. Dowd, Jr.
                                            Edward L. Dowd, Jr. #8341
                                            John D. Comerford #1443742
                                            7733 Forsyth Blvd., Suite 1410
                                            St. Louis, Missouri 63105
                                            (314) 889-7300 (telephone)
                                            (314) 863-2111 (facsimile)

                                            **HOWREY LLP**

                                            John E. O'Neill (admission *pro hac vice* pending)
                                            1111 Louisiana, 25th Floor
                                            Houston, Texas 77002-5242
                                            (713) 654-7604 (telephone)
                                            (713) 787-1440 (facsimile)

                                            *Attorneys for Plaintiff Gannon International Ltd.*


## CERTIFICATE OF SERVICE

The undersigned certifies that on this 12th day of May, 2010, a true and correct copy of the foregoing motion was served via ECMF filing on all attorneys of record. Further, the foregoing has been served via electronic mail and Federal Express to the following attorneys:

Stellman Keehnel
stellman.keehnel@dlapiper.com
Bradley T. Meissner
bradley.meissner@dlapiper.com
DLA Piper, LLP
701 Fifth Avenue, Suite 7000
Seattle, Washington 98104-7044

                                            /s/ Edward L. Dowd, Jr.