UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

GANNON INTERNATIONAL, LTD, et al.     )
                                             )
          Plaintiffs,           )
                                             )
          vs.                    )          Case No. 4:10CV0835 JCH
                                             )
WALTER BLOCKER, et al.,          )
                                           )
          Defendants.       )

## MEMORANDUM AND ORDER

      This matter is before the Court on Defendants Ignition Growth Management, LLC, and Sandalwood Investment Limited's Motion to Dismiss Plaintiffs' First Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2), or, in the Alternative, to Dismiss in Favor of Arbitration (Doc. No. 53), filed on June 11, 2010, and Defendant Walter Blocker's Motion to Dismiss Pursuant to Rule 12(b)(4) and (5) (Doc. No. 56), and Defendant Walter Blocker's Motion to Dismiss Plaintiffs' First Amended Complaint Under Rule 12(b)(6) (Doc. No. 59), filed June 14, 2010. These matters are briefed and ready for disposition.

## BACKGROUND

      Plaintiff Gannon International ("Gannon International"), a Missouri corporation with its principal place of business in St. Louis, Missouri, owns one-hundred percent (100%) of Plaintiff Gannon Pacific Company ("Gannon Pacific"). ("FAC", ¶2).[1] Gannon Pacific, a Missouri corporation with its principal place of business in St. Louis, Missouri, owns ninety-nine percent (99%) of Plaintiff Gannon Company (Hong Kong) Limited ("Gannon Hong Kong"). (Id., ¶3). Gannon Hong Kong,

---

[1]All allegations herein refer to Plaintiffs' First Amended Complaint ("FAC"or "Amended Complaint"). (Doc. No. 46).

a Hong Kong corporation, owns one-hundred percent (100%) of Plaintiff Gannon Vietnam Company Limited ("Gannon Vietnam"). (Id., ¶4). Gannon Vietnam, a Vietnamese corporation, owns approximately eight-nine percent (89%) of nominal defendant Gannon Brewery Joint Stock Company ("Gannon Brewery"). (Id., ¶5). Gannon Brewery is a Vietnamese Joint Stock Company. (Id., ¶10). Defendant Walter Blocker ("Blocker"), is a United States citizen residing in Vietnam, and he is the former Chief Executive Officer, General Director, and Legal Representative of Gannon Vietnam. (Id., ¶¶ 6-7). Defendant Ignition Capital Partners ("Ignition") is a limited liability company organized under the laws of the State of Washington with its principal place of business in Seattle, Washington. (Id., ¶ 8). Defendant Sandalwood Investment Limited ("Sandalwood") is a Hong Kong corporation wholly owned by Ignition. (Id., ¶ 9).

### A. Blocker's Wire Transfers

Plaintiffs allege that, in May 2007, Blocker caused a wire transfer of $415,000 (USD) from Gannon Hong Kong's bank account to the personal bank account of Blocker's wife, Doan Phuong Ly. (Id., ¶ 17). Plaintiffs allege that no officer or employee of Gannon International authorized this transaction, and that the transaction was not for a legitimate business purpose. (Id., ¶ 18). Plaintiffs further allege that, in February 2009, Blocker caused an unauthorized wire transfer of $40,000 (USD) from Gannon Hong Kong's bank account to the personal bank account of Gannon International's former Chief Financial Officer, Bob Greene ("Greene"), to enable the former CFO to pay his mortgage. (Id., ¶¶ 19-20; Doc. No. 46-1).

### B. The Share Subscription and Shareholders Agreement

Currently, Plaintiffs are building a brewery in Vietnam as a result of a joint venture with Anheuser-Busch InBev ("ABI"). (FAC, ¶ 22). Plaintiffs formed Gannon Brewery to operate the brewery and obtain the land. (Id.). Plaintiffs allege that, without authorization, Blocker entered into

a long-term leasehold agreement for a parcel of land on Plaintiffs' behalf. (<u>Id.</u>). Plaintiffs also allege that Blocker has refused to provide them with full access to the books and records of Gannon Hong Kong and Gannon Vietnam, including all documents associated with the Gannon Vietnam and ABI agreement that permits Gannon Vietnam to distribute ABI products in Vietnam. (<u>Id.</u>, ¶¶ 25-26).

In a letter dated April 2, 2010, Ignition and Sandalwood terminated their Letter of Intent in acquiring Gannon Brewery. (<u>Id.</u>, ¶ 28). In the April 2, 2010 letter, Ignition and Sandalwood stated that they were terminating their efforts to acquire Plaintiffs' brewery project in Vietnam. (<u>Id.</u>). Plaintiffs allege that, on April 19, 2010, Defendants executed a Share Subscription and Shareholders Agreement ("the Agreement") whereby Gannon Vietnam sold a large part of its interest in Gannon Brewery to Ignition and Sandalwood. (<u>Id.</u>, ¶ 29). The parties to the Agreement are Sandalwood, Gannon Vietnam, Doan Phuong Ly, Joint Stock Company, and Blocker. (Doc. No. 28-5, pp. 2, 5). Blocker signed the Agreement as the legal representative of Joint Stock Company and Gannon Vietnam. (Doc. No. 28-5, p. 5). In an e-mail dated April 29, 2010, Blocker resigned from Gannon Vietnam. (FAC, ¶30).

In a letter dated May 5, 2010 (the "Capital Call Letter") and addressed to Gannon Vietnam, Darrell Wayne Walker, in his capacity as the General Director and Legal Representative of Gannon Brewery, requested capital call contributions from Plaintiffs. (<u>Id.</u>, ¶ 31; Doc. No. 1-3). The Capital Call Letter was from Darrell Walker, legal representative of Gannon Brewery and employee of Ignition and Sandalwood, and addressed to the legal representative of Gannon Vietnam. (<u>Id.</u>). Blocker forwarded the Capital Call Letter to Gannon International. (FAC, ¶31). Plaintiffs responded to the Capital Call Letter, but did not provide any financing in response. (<u>Id.</u>).

## C.     This Litigation

On May 6, 2010, Plaintiffs filed their original complaint.  (Doc. No. 1).  On May 11, 2010, Plaintiffs had the original complaint personally served upon Blocker in Vietnam.  (Doc. Nos. 15, 63-1).

This Court granted Plaintiffs leave to file their First Amended Complaint, which was filed on May 27, 2010.  (Doc. No. 46).  In Count I, Plaintiffs allege that Blocker breached his fiduciary duties "by wrongfully transferring Gannon Hong Kong funds to his wife and to Gannon International's former Chief Financial Officer..., by interfering or threatening to interfere with the contractual and business relationships of Plaintiffs, by refusing to give Plaintiffs access to the books and records of Gannon Hong Kong and Gannon Vietnam; by attempting to involuntarily dilute Plaintiffs' interest in Gannon Brewery Joint Stock Company; and by committing knowing fraud and deceit upon Plaintiffs through the Capital Call letter...." (FAC, ¶ 35).  In Count II, Plaintiffs charge that Blocker committed fraud by transferring Gannon Hong Kong funds into the personal accounts of his wife and Gannon International's former CFO.  In Counts III and IV, Plaintiffs assert claims for unjust enrichment and conversion against Blocker in connection with the unauthorized transfers of Gannon Hong Kong funds.  In Count V, Plaintiffs charge that Blocker, Ignition, and Sandalwood knowingly committed fraud upon Plaintiffs by sending them the Capital Call Letter which contained false representations.  In Count VI, Plaintiffs allege that Blocker, Ignition, and Sandalwood tortiously interfered with the business relationships between Gannon and its prospective investors of Gannon Brewery.  In Count VII, Plaintiffs charge that "Ignition and Sandalwood . . . knowingly and intentionally aided, abetted, and participated in Blocker's breach of his fiduciary duties and his duty of loyalty to Plaintiffs[.]" (FAC, ¶ 77).  In Count VIII, Plaintiffs allege that Blocker, Ignition, and Sandalwood violated § 10(b) of the Securities and Exchange Act of 1934 by making "materially misleading and false statements

to Plaintiffs in the days and weeks preceding the Capital Call which were intended to lead Plaintiffs to believe that no capital calls or further efforts to alter the ownership structure of Gannon Brewery . . . would be undertaken." (FAC, ¶ 80). In Count IX, Plaintiffs assert a civil conspiracy claim against all Defendants. In Count X, Plaintiffs moves for a declaratory judgment; and, in Count XI, Plaintiffs seek a constructive trust.

## DISCUSSION

I.      **Ignition and Sandalwood's Motion to Dismiss**

A.      **Personal Jurisdiction**

1.      Standard

In Missouri, to obtain personal jurisdiction over a non-resident defendant, the plaintiff must make a prima facie showing that (1) the cause of action arose out of an activity covered by Missouri's long-arm statute, and (2) the defendant had sufficient minimum contacts with Missouri to satisfy the due process requirements. Johnson v. Arden, 614 F.3d 785, 794 (8th Cir. 2010)(citing In re Marriage of Berry, 155 S.W.3d 838, 840 (Mo. Ct. App. 2005)). "Missouri's long-arm statute, Mo. Rev. Stat. § 506.500, confers jurisdiction to the extent allowed by the Due Process Clause." Johnson, 614 F.3d at 794 (citing State ex rel Deere and Co. v. Pinnell, 454 S.W.2d 889, 892 (Mo. 1970)).[2] Under this standard, personal jurisdiction exists "only if the contacts between the defendant and the forum state

---

[2]The statutes states, in relevant part:

1. Any person . . . whether or not a citizen or resident of this state . . . submits . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any such acts:

(1) The transaction of any business within this state;

(2) The making of any contract within this state;

(3) The commission of a tortious act within this state. . . .

are sufficient to establish that the defendant has purposefully availed himself of the benefits and protections of the forum state." Johnson v. Woodcock, 444 F.3d 953, 955 (8th Cir. 2006). "The Eighth Circuit examines the following five factors to determine whether these constitutional requirements for personal jurisdiction have been met: (1) the nature and quality of the defendant's contacts with the forum state; (2) the quantity of contacts; (3) the relationship between the cause of action and the contacts; (4) the forum state's interest in providing a forum for its residents; and (5) the convenience of the parties." Insituform Techs. v. Reynolds, Inc., 398 F. Supp. 2d 1058, 1066 (E.D. Mo. 2005)(citing Digi-Tel Holdings, Inc. v. Proteq Telecomm, Inc., 89 F.3d 519, 522-23 (8th Cir. 1996)). The Court looks at all of the factors in the aggregate and examines the totality of the circumstances in making a personal jurisdiction determination. Northrup King Co. v. Compania Productora Semillas Algodoneras, S.A., 51 F.3d 1383, 1388 (8th Cir. 1995).

"A court obtains general jurisdiction 'against a defendant who has continuous and systematic contacts with the forum state, even if the injuries at issue in the lawsuit did not arise out of the defendant's activities directed at the forum.'" Johnson, 614 F.3d 794 (quoting Dever v. Hentzen Coatings, Inc., 380 F.3d 1070, 1073 (8th Cir. 2004)). For specific jurisdiction, jurisdiction is "viable only if the injury giving rise to the lawsuit occurred within or had some connection to the forum state." Romak USA, Inc. v. Rich, 384 F.3d 979, 984 (8th Cir. 2004) (citation omitted). "In other words, the cause of action must 'arise out of' or 'relate to' a defendant's activities within a state." Id. (quoting Lakin v. Prudential Sec., Inc., 348 F.3d 704, 707 (8th Cir. 2003).

To defeat a motion to dismiss for lack of personal jurisdiction, Plaintiffs need only make a *prima facie* showing of jurisdiction, and may do so by affidavits, exhibits, or other evidence. Romak USA, Inc. v. Rich, 384 F.3d 979, 983 (8th Cir. 2004)(citing Epps v. Stewart Info. Servs. Corp., 327 F.3d 642, 647 (8th Cir. 2003)). The Court must view the evidence in the light most favorable to

Plaintiffs and resolve factual conflicts in their favor, but Plaintiffs, as the party seeking to establish the Court's in personam jurisdiction, carry the burden of proof, and the burden does not shift to Defendants as the party challenging jurisdiction. Romak USA, Inc., 384 F.3d at 983-84 (citing Epps, 327 F.3d at 647).

2.    Application

Plaintiffs assert that Ignition and Sandalwood are subject to personal jurisdiction in this Court because (a) Ignition communicated with Gannon personnel in Missouri and sent a wire transfer to Missouri and (b) based upon the national service of process provision of Section 27 of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. §78aa, Plaintiffs alleged a claim under Section 10(b) of the 1934 Act against Ignition/Sandalwood.

First, jurisdiction cannot be established pursuant to the national service of process under Section 10(b) because Plaintiffs' Section 10(b) claim fails as a matter of law. See Morrison v. Nat'l Austl. Bank Ltd., 130 S. Ct. 2869, 2883 (2010).[3]

Second, Plaintiffs allege personal jurisdiction over Ignition based upon its substantial contacts with Missouri and alleges that Sandalwood is a mere alter ego of Ignition. Plaintiffs allege that "[o]ver the course of several months, Ignition wired money to Plaintiffs in St. Louis; sent substantive business letters to Plaintiffs in St. Louis; sent dozens of emails to Plaintiffs' employees in St. Louis; conducted telephonic conference calls with Plaintiffs' employees in St. Louis; sent multiple contracts (in 'draft' and 'final' form) to Plaintiffs in St. Louis, including personal guarantees, secured credit facility agreements, secured promissory notes, and 'charge over shares' documents; and negotiated

---

[3]This issue will be discussed in greater detail in the section dealing with Blocker's Rule 12(b)(6) Motion to Dismiss.

business transactions with Plaintiffs in St. Louis." ( FAC, ¶8). Plaintiffs allege that Gannon Pacific, a Missouri corporation was a party to these transactions. (Id.)

In response, Ignition and Sandalwood assert that these transactions were far too attenuated and unrelated to the present action to provide jurisdiction. (Memorandum of Defendants Ignition Grown Management, LLC and Sandalwood Investment Limited in Support of their Motion to Dismiss the Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2), or, in the Alternative, to Dismiss in Favor of Arbitration ("Memorandum"), Doc. No. 54, pp. 12-14).[4] Ignition and Sandalwood emphasize that they lack sufficient contacts with Missouri residents. (Memorandum, pp. 14-15). No contracts involving Ignition and Sandalwood were executed in Missouri. No representatives of Ignition and Sandalwood traveled to Missouri. No negotiations involved the purchase of any business, property or assets in Missouri. Defendants argue that "the few Missouri contacts alleged by Plaintiffs relate to the Bridge Loan and to Ignition's contemplated investment directly in Gannon Hong Kong (neither of which is the subject of this lawsuit), not to Sandalwood's later investment in the [Brewery] Company (which is the subject of this lawsuit), and so those contacts would in any event be far too tenuous to support the exercise of personal jurisdiction concerning the claims alleged in the Amended Complaint." (Memorandum, p. 16).

In response, Plaintiffs outline several contacts between Ignition and Sandalwood and Missouri. These contacts included several conversations with Gannon International's former employee, Robert P. Greene, and counsel in St. Louis. In addition, Ignition and Sandalwood negotiated a Bridge Loan with Greene and Gannon International's counsel. Gannon Pacific, a

---

[4]Ignition and Sandalwood surmise that Plaintiffs attempt to allege personal jurisdiction based upon "(i) email, phone and mail communications between Ignition and Gannon personnel located in Missouri in connection with the Letter of Intent and the Bridge Loan; and (ii) Ignition's act of wiring funds to a Gannon Hong Kong bank account in Missouri in connection with the Bridge Loan." (Memorandum, p. 13 (citing FAC, ¶8).

Missouri corporation, was also a party to the Bridge Loan. (Plaintiffs' Memorandum in Opposition to the Motion to Dismiss of Ignition Growth Management LLC and Sandalwood Investments Limited, Doc. No. 71, pp. 6-8).

The Court finds that these contacts with Missouri are insufficient to establish personal jurisdiction over Ignition and Sandalwood. Plaintiffs have outlined a series of contacts between Ignition and Sandalwood which are all related to their attempt to negotiate a letter of intent and a Bridge Loan. These negotiations terminated weeks before the Agreement, which is the subject of this lawsuit. Moreover, these contacts were directed at Gannon Hong Kong, not the forum state, Missouri. The mere fact that an incidental Gannon International employee and Gannon International's outside counsel were based in Missouri is insufficient for the Court to find that Ignition and Sandalwood purposefully availed themselves of jurisdiction in this Court. Accordingly, the Court finds that these contacts are too attenuated from the subject of this lawsuit to provide a basis for personal jurisdiction for Sandalwood and Ignition. The Court grants Sandalwood and Ignition's Motion to Dismiss on this basis.[5]

## II. Blocker's Rule 12(b)(4) and (5) Motion to Dismiss

In his Motion to Dismiss, Blocker argues that Plaintiffs' Amended Complaint should be dismissed for insufficient process and insufficient service of process under Federal Rules of Civil

---

[5]Moreover, even if this Court did not dismiss this case based upon lack of personal jurisdiction, the Court would dismiss Plaintiffs' claims against Ignition and Sandalwood in favor of arbitration, as discussed below with respect to Blocker's Rule 12(b)(6) Motion to Dismiss. Unlike Blocker, all of the claims against Ignition and Sandalwood relate to the Agreement. Therefore, all of the claims against Ignition and Sandalwood would have been dismissed in favor of arbitration.

Procedure 12(b)(4) and (5)[6] because Plaintiffs failed to accomplish service in accordance with the Federal Rules of Civil Procedure.  (Doc. No. 63-1, ¶2).

## A.    Legal Standard

Rule 4(f) provides:

Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served at a place not within any judicial district of the United States:

(1) by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad Judicial and Extrajudicial Documents;

(2) if there is no international agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice:

> (A)   as prescribed by the foreign country's law for service in that country in an action in its courts of general jurisdiction;

> (B)   as the foreign authority directs in response to a letter rogatory or letter of request; or

> (C)   unless prohibited by the foreign county's law, by:

>> (I)  delivering a copy of the summons and of the complaint to the individual personally; or

>> (ii) using any form of mail that the clerk addresses and sends to the individual and that requires a signed receipt; or

(3) by other means not prohibited by international agreement, as the court orders.

Fed.R.Civ.P. 4(f).

---

[6] 12(b)(4) provides the defense of insufficient process and 12(b)(5) provides the defense of insufficient service of process.

## B.     Analysis

The parties disagree as to whether this was proper service under Fed.R.Civ.P. 4.  Here, a licensed Vietnamese attorney personally gave Blocker a copy of the summons, the original complaint and other relevant documents. (Plaintiffs' Memorandum in Opposition to the Motion to Dismiss of Defendant Walter Blocker Under Federal Rules 12(b)(4) and (5) ("Opposition"), Doc. No. 70, p. 1; Doc. No. 15).  The parties agree that Fed.R.Civ.P 4(f)(1) is inapplicable because "Vietnam is not a signatory to the Hague Convention."  (Defendant Walter Blocker's Memorandum in Support of Motion to Dismiss Pursuant to Rule 12(b)(4) and (b) ("Memorandum"), Doc. No. 63-1, p. 3).  Rather, the parties dispute whether service was proper under the third method of serving individuals in foreign countries set forth in Fed.R.Civ.P. 4(f)(2)(C)(I).  Neither party cites any United States case law.  Instead, both parties claim that the result is apparent from the plain language of Vietnamese law and code.

To support his argument for dismissal of this action with respect to him, Blocker cites several provisions of  Vietnam's Law on Judicial Assistance ("VLJA")[7] and Vietnam's Civil Procedure Code ("VCPC").[8]  Article 10 of the VLJA provides that "[t]he scope of civil legal assistance between Vietnam and foreign countries" includes "[s]ervice of papers, dossiers and documents **related to civil legal assistance**."  ( Doc. No. 63-3, p. 4; Memorandum, p. 3) (emphasis added).  Article 6 of the VLJA explains that "[l]egal assistance is provided on the basis of the request of a competent body of Vietnam or a foreign country through legal mandate."  (Doc. No. 63-3, p. 3).  Article 6 defines "legal mandate" as "a written request of a competent body of Vietnam or a foreign country for the

---

[7]Doc. No. 63-3.

[8]Doc. No. 63-2.

performance of one or a number of legal assistance activities under the provisions of the law of the concerned country or the treaty to which Vietnam is a contracting party." (Id.).

Here, the summons and Complaint served upon Blocker did not seek the "legal assistance" of Vietnam through a legal mandate. Instead, Plaintiff served the summons and the original complaint on Blocker to notify him that he was named as a defendant in this action. Article 10 of the VLJA does not indicate that service of process on Blocker required the assistance of Vietnam. The Court finds that Article 10 of the VLJA does not demonstrate that Plaintiffs' service or process of service on Blocker was insufficient. Accordingly, the Court finds that Article 10 of the VLJA does not prohibit personal service of the Complaint under Rule 4.

Next, Blocker cites Article 15 of the VLJA, which is entitled "Procedures to receive and handle civil legal mandates of foreign countries," and provides:

> 1. Within ten working days after the receipt of legal mandate dossiers of competent bodies of the requesting countries, the Ministry of Justice shall record in the legal mandate book examine the validity of the dossiers and transfer them to competent Vietnamese bodies for implementation. If the dossiers are invalid, the Ministry of Justice shall return them to competent bodies of the requesting countries and clearly state the reasons therefor.
>
> 2. Within five working days after receipt of competent Vietnamese bodies written notices on the performance of legal mandates, the Ministry of Justice shall transfer the notices to competent bodies of the requesting countries in accordance with the treaties to which Vietnam and the requesting countries are contracting parties or through the diplomatic channel.
>
> 3. If the legal mandate cannot be performed or the time limit has expired but the foreign countries request or need to supplement relevant information or documents, the competent Vietnamese bodies performing the legal mandates shall notify in writing the Ministry of Justice thereof and clearly state the reasons therefor so that the Ministry of Justice shall notify such to the competent bodies of the requesting countries.

(Doc. No. 63-3, pp. 5-6). As discussed above, the summons and the original complaint served upon Blocker are not "legal mandates" because they do not seek the legal assistance of a governing body

of Vietnam. Rather, these documents merely inform Blocker of the legal proceedings occurring here. Because Article 15 of the VLJA applies to "legal mandates," the Court concludes that this provision also provides no basis for dismissal of Blocker from this action for insufficient service or process of service under Rule 4.

Finally, Blocker cites Article 418 of the VCPC, which provides:

1. Vietnamese courts shall recognize papers and documents made, issued, or certified by foreign competent agencies in accordance with foreign laws or outside the Vietnamese territory if such papers or documents have been consularly legalized except otherwise provided for by international treaties which Vietnam has signed or acceded to.

2. Papers and documents made in foreign languages must be accompanied by their Vietnamese versions lawfully notarized or authenticated when being sent to Vietnamese courts.

(Doc. No. 63-2, p. 5). Blocker cites this provision for the proposition that "[u]pon information and belief, a Vietnamese court will only assist if the request for assistance is made in writing by a competent authority. All such documents must be legalized and consularized." (Doc. No. 63-1, ¶4(b)).[9] As with the other provisions cited by Blocker, this Article of the VCPC does not address the procedure for personally serving a Vietnamese resident. The Vietnamese court does not need to recognize the complaint and other documents served on Blocker. The Court finds that Article 418 of the VCPC does not prohibit personal service of the original complaint under Rule 4.

Based on the foregoing, the Court will deny Blocker's Motion to Dismiss this action with respect to him for insufficient service or process of service. <u>See also</u> (Doc. No. 70-1, ¶9) (a licensed

_____

[9]Blocker does not identify the source of his "information and belief," nor does Blocker state why this Court should consider such "information and belief" in relation to a motion to dismiss.

Vietnamese attorney stating that the Vietnamese law cited by Blocker does not "prohibit service of process by personal delivery.").[10]

### III.     Blocker's Rule 12(b)(6) Motion to Dismiss

In addition to his 12(b)(4) and (5) Motion to Dismiss, Blocker also moves to dismiss Plaintiffs' Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

### A.     Legal Standard

In ruling on a motion to dismiss, the Court must view the allegations in the complaint liberally in the light most favorable to Plaintiff. Eckert v. Titan Tire Corp., 514 F.3d 801, 806 (8th Cir. 2008) (citing Luney v. SGS Auto. Servs., Inc., 432 F.3d 866, 867 (8th Cir. 2005)). Additionally, the Court, "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." Coons v. Mineta, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). A motion to dismiss must be granted if the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." Kaminsky v. Missouri, No. 4:07-CV-1213, 2007 U.S. Dist. LEXIS 72316, at *5-6 (E.D. Mo. Sept. 27, 2007) (citing Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007) (abrogating the "no set of facts" standard for Fed. R. Civ. P. 12(b)(6) found in Conley v. Gibson, 78 S. Ct. 99 (1957)). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief "requires more than labels and conclusions, and a formulaic recitation of the

---

[10]Blocker and Plaintiffs provide interpretations of Vietnamese law that are insufficient for a motion to dismiss. Blocker's reference to "information and belief" and Plaintiffs' reference to the legal opinion of a Vietnamese attorney essentially force this Court to rule on a battle of the experts, which is improper for a motion to dismiss.

elements of a cause of action will not do." Bell Atl. Corp., 127 S. Ct. at 1965; Huang v. Gateway Hotel Holdings, 520 F. Supp. 2d 1137, 1140 (E.D. Mo. 2007).

**B.     Choice of law**

Initially, the parties dispute whether Missouri or Vietnamese law applies.  Plaintiffs assert federal court jurisdiction based upon 28 U.S.C. §1367.  ( FAC, ¶11).  In diversity actions, federal courts apply the forum state's choice of law rules.  John T. Jones Constr. Co. v. Hoot Gen. Constr. Co., 613 F.3d 778, 782 (8th Cir. 2010) (citing Cicle v. Chase Bank USA, 583 F.3d 549, 553 (8th Cir. 2009));  Stricker v. Union Planters Bank, 436 F.3d 875, 877 (8th Cir. 2006) ("In a diversity action, a district court sitting in Missouri follows Missouri's choice-of-law rules to determine applicable state law.").  For tort claims, Missouri courts apply the "most significant relationship" test.  Wolfley v. Solectron USA, Inc., 541 F.3d 819, 823 (8th Cir. 2008) (citing Stricker, 436 F.3d at 878).  The test requires courts to consider the following factors:   (a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of the business of the parties, and (d) the place where the relationship, if any, between the parties is centered.  Restatement (Second) of Conflicts of Laws § 145(2).

Blocker asserts that Plaintiffs' claims should be dismissed because Vietnamese law applies and Plaintiffs do not state causes of action under Vietnamese law.  (Defendant Walter Blocker's Memorandum in Support of Motion to Dismiss Plaintiffs' First Amended Complaint Under Federal Rule 12(b)(6) ("Memorandum"), Doc. No. 60, p. 5 (citing Doc. No. 32, pp. 12-14)).  Applying the most significant relationship test, Blocker notes that the purported injury from the Agreement and the Capital Call letter both occurred in Vietnam.  In addition, Gannon Vietnam is the only corporation with ownership interest in Gannon Brewery.

In response, Plaintiffs assert that Missouri law should be applied. Plaintiffs note that Blocker is a United States citizen. Gannon Pacific and Gannon International are Missouri Corporations. Blocker was a Gannon International employee. Blocker's salary and benefits were paid through Gannon Services Corporation, a Missouri corporation. Plaintiffs allege that Blocker misappropriated funds from Gannon Hong Kong, a subsidiary of Gannon Pacific, a Missouri corporation. Further, Plaintiffs allege that Blocker illegally transferred those funds from Gannon Hong Kong to a Missouri resident's bank account in Missouri.

Further, Plaintiffs assert that the information provided is insufficient to support a finding that Vietnamese law applies. (Response, pp. 34-35). Specifically, Plaintiffs state that Blocker's position that Vietnamese law applies is based upon primarily affidavit of Nguyen Dang Trung (Doc. No. 32-1),[11] which is insufficient for purposes of a motion to dismiss. (See Response, pp. 33-34; Memorandum, p. 5). Moreover, Blocker fails to identify the relevant Vietnamese law that would apply. (Response, pp. 34-35).

The Court agrees that it does not have sufficient information at this point to determine as a matter of law which law should apply and, if Vietnamese law does apply, whether Plaintiffs state a cause of action under Vietnamese law. Blocker asks this Court to interpret Vietnamese law based upon a purported expert affidavit. A motion to dismiss is not the proper procedural posture for such a determination. After the parties have engaged in some discovery regarding the proper choice of law, the parties may revisit this issue in a limited motion for summary judgment. Accordingly, the Court assumes, without holding, that Missouri law applies so that it can address the other issues raised in the Motion to Dismiss.

---

[11]Mr. Trung has been licensed to practice law in Vietnam for 21 years. (Doc. No. 32-1, ¶1).

## C.    Analysis

### 1.    Fiduciary Duty (Count I)

"An adequately pleaded claim for breach of fiduciary duty consists of the following elements: l) the existence of a fiduciary relationship between the parties, 2) a breach of that fiduciary duty, 3) causation, and 4) harm." Robert T. McLean Irrevocable Trust U/A/D v. Patrick Davis, P.C., 283 S.W.3d 786, 792-793 (Mo. Ct. App. 2009) (citation omitted). "A fiduciary relationship may arise as a matter of law by virtue of the parties' relationship, e.g., attorney-client, or it may arise as a result of the special circumstances of the parties' relationship where one places trust in another so that the latter gains superiority and influence over the former." Shervin v. Huntleigh Secs. Corp., 85 S.W.3d 737, 740-741 (Mo. Ct. App. 2002) (citing A.G. Edwards & Sons, Inc. v. Drew, 978 S.W.2d 386, 394 (Mo. Ct. App.1998)). "The question in determining whether a fiduciary or confidential relationship exists is whether or not trust is reposed with respect to property or business affairs of the other." Shervin v. Huntleigh Secs. Corp., 85 S.W.3d at 741 (citing Schimmer v. H. W. Freeman Const. Co., Inc., 607 S.W.2d 767, 770 (Mo. Ct. App. 1980)).

Blocker asserts that Plaintiffs' fiduciary duty claim fails for several reasons. First, Blocker claims that Plaintiffs have not alleged a fiduciary relationship between Blocker and all of the Plaintiffs. (Memorandum, pp. 6-7). Blocker notes that Plaintiffs do not allege that Blocker held any position at Gannon International, Gannon Pacific or Gannon Hong Kong. Plaintiffs only allege that Blocker was an "employee" of Gannon International ( FAC, ¶6), and that Blocker was the Chief Executive Officer, General Director, and Legal Representative of Gannon Vietnam. ( FAC, ¶34).

Plaintiffs allege that Blocker was an employee of Gannon International and that he " breached his fiduciary duty to Gannon International[.]" ( FAC, Introduction, p. 2 and ¶ 6). Plaintiffs note that, under Missouri law, "every employee owes his or her employer a duty of loyalty." (Plaintiffs'

Memorandum in Opposition to the Motion to Dismiss of Defendant Walter Blocker Under Federal Rule 12(b)(6) ("Response"), Doc. No. 69, p. 3 (citing Scanwell Freight Express STL, Inc. v. Chan, 162 S.W.3d 477, 479 (Mo. 2005)). Plaintiffs allege that Blocker owes fiduciary duties to Plaintiffs because "(a) he once was and continues to hold himself out as Chief Executive Officer, General Director, and Legal Representative of Gannon Vietnam, (b) Plaintiffs necessarily gave Blocker a large degree of responsibility and independence in his management and control of Plaintiffs' interests, activities and investments in Vietnam, and (c) Plaintiffs necessarily gave trust and confidence to Blocker to run their activities in Vietnam." (FAC, ¶34). Plaintiffs also claim that Blocker had access to the accounts of Gannon Hong Kong by virtue of his employment with Gannon International and that he illegally transferred funds from Gannon Hong Kong. (Response, p. 4 (citing FAC, ¶¶6, 17-20, 27, 35)). Plaintiffs allege that Blocker controlled the books and records of Gannon Hong Kong and Gannon Vietnam. (Response, pp. 4-5 (citing FAC, ¶¶25, 35).

The Court finds that Plaintiffs have plead a fiduciary duty sufficient to withstand a motion to dismiss. Plaintiffs allege that they placed great trust and authority regarding their business with Blocker. Plaintiffs allege that Blocker transferred funds from Gannon Hong Kong, purchased land and entered into a long-term lease on behalf of Plaintiffs, controlled the bookkeeping of Gannon Hong Kong and Gannon Vietnam, and held himself out as the Chief Executive Officer, General Director and Legal Representative of Gannon Vietnam. (FAC, ¶¶6, 17-19, 22-23, 25, 34-35). These allegations are sufficient to allege that Blocker owed a fiduciary duty to Plaintiffs. Shervin v. Huntleigh Secs. Corp., 85 S.W.3d at 741; Schimmer, 607 S.W.2d at 770.

Second, Blocker asserts that Plaintiffs' claim for breach of fiduciary duty fails because it does not allege conduct sufficient to establish that Blocker breached any fiduciary duties or that such breaches caused damage. In paragraph 35 of the Complaint, Plaintiffs allege that Blocker breached

his fiduciary duties by (1) "wrongfully transferring Gannon Hong Kong funds to his wife and to Gannon International's former Chief Financial Officer by wire transfer for no legitimate business purpose," (2) "by interfering or threatening to interfere in the contractual and business relationships of Plaintiffs," (3) "by refusing to allow Plaintiffs access to the books and records of Gannon Hong Kong and Gannon Vietnam," (4) "by attempting to involuntarily dilute Plaintiffs' interest in Gannon Brewery Joint Stock Company," and (5) "by committing knowing fraud and deceit upon Plaintiffs through the Capital Call letter and through other acts and omissions." (FAC, ¶35). Blocker claims that Plaintiffs have not alleged that they suffered damages from the fund transfers themselves. (Memorandum, p. 8). The Court, however, finds sufficient allegation of damages due to the "wrongful" loss of the funds.

Blocker also claims that Plaintiffs have not alleged the "nature of Plaintiffs' purported expectancy and have failed to allege that Mr. Blocker acted with 'improper means.'" (Memorandum, p. 8).[12] Plaintiffs, however, do not need to prove "improper means" to state a claim for breach of fiduciary duty. Robert T. McLean Irrevocable Trust U/A/D, 283 S.W.3d at 792-793 (elements of a breach of fiduciary duty claim).

With respect to Plaintiffs' claim that Blocker breached his fiduciary duties by refusing access to the books and records of Gannon Hong Kong and Gannon Vietnam, Blocker argues that Plaintiffs have refused to "identify the precise documents at issue" and have failed to allege that "Mr. Blocker had exclusive control or custody of the unspecified records they sought." (Memorandum, p. 9). Blocker also complains that Plaintiffs do not allege how Blocker's denial of access to these "unspecified" documents caused harm. (Id.) The Court finds that Plaintiffs identify the documents

---

[12]Blocker claims that Plaintiffs needed to allege "improper means" as part of a breach of fiduciary duty claim, but this is not part of the test articulated under Missouri law.

at issue to a reasonable degree and show how they are damaged. The parties can address Blocker's arguments during discovery; the allegations are sufficient to withstand a motion to dismiss.

Blocker then argues that he "owed competing fiduciary duties to both Gannon Vietnam and the Joint Stock Company." (Memorandum, p. 9). According to Blocker, because he "owed dual fiduciary duty obligations to both Gannon Vietnam and the Gannon Brewery Joint Stock Company, Plaintiffs cannot base their fiduciary duty claim merely on an allegation that Gannon Vietnam suffered some type of harm in a transaction involving both companies. Rather, Plaintiffs must allege that Mr. Blocker somehow failed to represent the best interest of both companies in the transaction." (Memorandum, p. 10). The Court believes that this issue should be resolved on summary judgment. As currently alleged, Blocker has stated a cause of action for breach of fiduciary duty. Whether or not Blocker owed a fiduciary duty to Gannon Brewery and whether that duty was breached under Vietnamese law (Memorandum, p. 10, n. 2) requires the Court to address matters outside the pleadings and should be resolved at summary judgment or trial.

Blocker also states that Plaintiffs' claim that Blocker breached his fiduciary duty by committing fraud through the Capital Call Letter fails. Blocker states that "the letter contained no false statements and Plaintiffs cannot show that it relied on its detriment on any statements in the letter." (Memorandum, p. 11). Whether or not there were any false statements in the letter and whether Plaintiffs can demonstrate reliance are issues to be resolved at the summary judgment stage. Plaintiffs have alleged that these statements were false; these allegations are not pleading deficiencies for a breach of fiduciary duty claim that can be resolved on a 12(b)(6) motion.

2.      Fraud (Counts II and V)

The elements of a cause of action for fraudulent misrepresentation are (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity, or ignorance of its truth;

(5) the speaker's intent that it should be acted on by the person and in the manner reasonably contemplated; (6) the hearer's ignorance of the falsity of the representation; (7) the hearer's reliance on the representation being true; (8) the hearer's right to rely thereon; and (9) the hearer's consequent and proximately caused injury. Larabee v. Eichler, 271 S.W.3d 542, 546 (Mo. 2008)(citing Hess v. Chase Manhattan Bank, USA, N.A., 220 S.W.3d 758, 765 (Mo. banc 2007)). Plaintiffs allege two different causes of action for fraud.

a.    Count II

Plaintiffs allege that, in May 2007, Blocker transferred $415,000 from Gannon Hong Kong into his wife's personal bank account and, in February 2009, Blocker transferred $40,000 from Gannon Hong Kong into the personal bank account of Gannon International's former CFO. (FAC, ¶¶ 38, 39). Plaintiffs allege that when they questioned Blocker, he claimed that the transfers were for legitimate business purposes. (FAC, ¶40). Plaintiffs claim that they relied on these representations until their investigation revealed otherwise. ( FAC, ¶43). Plaintiffs allege that they "were proximately damaged by Blocker's false claims." ( FAC, ¶46).

Blocker asserts that Plaintiffs' fraud claim fails because Plaintiffs have not alleged that they relied on any false statement to their detriment or that they were damaged by any false statement. (Memorandum, pp. 11-12). The alleged misrepresentations occurred months or years after the transfers were made. Nevertheless, Plaintiffs continued to investigate the wire transfers even after Blocker claimed they were made for a legitimate business purpose. The Court finds that Plaintiffs' claim fails because they have not alleged that they relied on Blocker's alleged misrepresentations.

Moreover, Plaintiffs have not alleged how they were injured by the after-the-fact misrepresentations. Plaintiffs claim that they were injured because they were deprived of the use or benefit of the funds. (Response, p. 8). Plaintiffs' theory of damages, however, relates to the

improper transfer of the funds, not to the fraudulent statements made by Blocker. The Court finds that Plaintiffs have failed to allege they were damaged by the fraudulent statements. The Court dismisses Plaintiffs' fraud claim in Count II without prejudice.

<blockquote>b.      Count V</blockquote>

Count V of Plaintiffs' Complaint relates to statements Ignition and Sandalwood made in an April 2, 2010 letter terminating their Letter of Intent, Blocker's April 29, 2010 resignation email and the Capital Call letter of May 5, 2010 from an employee of Ignition and Sandalwood. ( FAC, ¶ 59-60).

<blockquote>i.      April 2, 2010 Letter</blockquote>

Blocker claims that Plaintiffs' fraud claim in the April 2, 2010 letter fails because it does not allege that Blocker made a false statement. (Memorandum, pp. 16-17). The April 2, 2010 termination letter was not written by Blocker. Plaintiffs admit that they need to do discovery to determine how Blocker is involved. <u>See</u> Memorandum, p. 12 ("Blocker's role in the drafting of the April 2, 2010 letter is unclear at this stage."). From the face of the April 2, 2010 letter, Blocker was not involved and did not make any material misleading statements. The Court dismisses Plaintiffs' fraud claim with respect to Blocker regarding the April 2, 2010 letter.

<blockquote>ii.      April 29, 2010 E-mail</blockquote>

Plaintiffs allege that Blocker falsely represented that he resigned from Gannon Vietnam completely in his April 29, 2010 e-mail. (FAC, ¶63). The parties agree that Blocker resigned from his position as Chief Executive Officer of Gannon Vietnam in his April 29, 2010 email. (Memorandum, p. 18; Response, p. 13). Plaintiffs allege that Blocker "intended for Plaintiffs to rely on" his resignation "in the manner reasonably contemplated" and Plaintiffs relied on this

representation "to their detriment." (FAC, ¶63). Blocker asserts that he made no material misstatements.

Assuming for purposes of the motion to dismiss that Blocker's resignation constituted a misrepresentation, Plaintiffs, however, fail to state how they relied on Blocker's resignation to their detriment. The conclusory allegations that Plaintiffs relied on the representation in the manner "reasonably contemplated" and relied "to their detriment" are insufficient. See Bell Atl. Corp., 127 S. Ct. at 1965 (more than labels and conclusions are required). The Court dismisses Plaintiffs' fraud claim with respect to Blocker regarding the April 29, 2010 e-mail.

### iii. May 5, 2010 Capital Call Letter

The Complaint alleges that "Blocker, Ignition and Sandalwood acted with actual knowledge and intent to deceive and defraud Plaintiffs in the course of causing the Capital Call[.]" ( FAC, ¶68). The May 5, 2010 Capital Call Letter was not written by Blocker. Blocker states that Plaintiffs' fraud claim fails because they do not allege that Blocker made any statements in the Letter. The Letter was written by Darrell Walker, an employee of Ignition and Sandalwood, not Blocker. (Memorandum, p. 18; FAC, ¶64). Although Blocker did not sign the Capital Call Letter, the Court finds that Plaintiffs allege that Blocker helped make the representations in the Capital Call letter. This allegation is sufficient to withstand a motion to dismiss.

Blocker also asserts that Plaintiffs' claim must be dismissed because they have not alleged that the Capital Call Letter contained any misstatements. (Memorandum, p. 18). Instead, Blocker states that Plaintiffs only allege that a May 4, 2010 resolution never occurred. (Memorandum, pp. 18-19; FAC, ¶66). Plaintiffs allege that the "Capital Call letter of May 5, 2010 reference[d] 'a written resolution of the board of management of the Company dated 4 May 2010' yet such a resolution would be impossible in light of Blocker's resignation from Gannon Vietnam on April 29, 2010." (

FAC, ¶66). Blocker states that the May 4, 2010 resolution referenced in the Capital Call Letter relates to one made by Gannon Brewery, not Gannon Vietnam.

The Court finds Plaintiffs state a claim for fraud with respect to the May 5, 2010 Capital Call Letter. The parties disagree as to whether there was a misrepresentation made in the Capital Call Letter. Whether there was a misrepresentation is an issue of fact which cannot be determined at this stage of litigation. The Court denies Blocker's motion to respect to the May 5, 2010 Capital Call Letter.

### 3. Unjust Enrichment (Count III)

Under Missouri law, the essential elements of a quasi-contract, unjust enrichment claim are: 1) a benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of the fact of such benefit; 3) acceptance and retention by the defendant of that benefit under circumstances in which retention without payment would be inequitable. Webcon Group, Inc. v. S.M. Props., L.P., 1 S.W.3d 538, 542 (Mo. Ct. App. 1999)(citations omitted); ACLU/E. Mo. Fund v. Miller, 803 S.W.2d 592, 595 (Mo. 1991) (en banc) (unjust enrichment occurs where a benefit is conferred upon a person in circumstances in which retention by him of that benefit without paying its reasonable value would be unjust). "An essential element" of an unjust enrichment claim "is a benefit conferred upon the defendant by the plaintiff." ACLU/E. Mo. Fund, 803 S.W.2d at 595 (internal quotation marks omitted).

Plaintiffs allege that Blocker was unjustly enriched when he transferred $415,000 from Gannon Hong Kong into his wife's personal bank account for no legitimate business purpose and for his own benefit. ( FAC, ¶¶48, 49). Blocker claims that Plaintiffs' unjust enrichment claim fails because Plaintiffs did not allege that Blocker retained the funds that had been transferred into his wife's bank account. (Memorandum, pp. 13-14).

The Court finds that Plaintiffs allege a claim for unjust enrichment. Plaintiffs do not need to allege that Blocker "permanently retained the funds for his own (or his wife's) benefit." (Memorandum, p. 14). The Court denies Blocker's motion to dismiss Count III.

4.      Conversion (Count IV)

"Under Missouri law, conversion occurs where there is an 'unauthorized assumption of the right of ownership over the personal property of another to the exclusion of the owner's rights.'" Monarch Fire Prot. Dist. v. Freedom Consulting & Auditing Servs., 678 F. Supp. 2d 927, 944 (E.D. Mo. 2009) (citing Emerick v. Mutual Benefit Life Ins. Co., 756 S.W.2d 513, 523 (Mo. 1988)). A claim for conversion has the following three elements: "(1) plaintiff was the owner of the property or entitled to its possession; (2) defendant took possession of the property with the intent to exercise some control over it; and (3) defendant thereby deprived plaintiff of the right to possession." JEP Enters., Inc. v. Wehrenberg, Inc., 42 S.W.3d 773, 776 (Mo. Ct. App. 2001).

Blocker states that Plaintiffs' conversion claim fails because it does not allege that Blocker intentionally took possession of Plaintiffs' funds with the intent to exercise control over it and because it does not allege that Blocker deprived Plaintiffs of the right to possession of the funds. (Memorandum, p. 15). The Court finds that Blocker is reading the Amended Complaint too narrowly. Plaintiffs allege that Blocker transferred $415,000 from Gannon Hong Kong to his wife's account, and that Blocker had no right to these funds. ( FAC, ¶¶52-54). Plaintiffs sufficiently allege a claim for conversion.[13]

---

[13]In a footnote, Blocker also asserts that Plaintiffs' conversion claim fails because Plaintiffs' claim does not fall within the narrow exception that allows conversion claims for money. (Memorandum, p. 16, n. 4). Plaintiffs can state a claim for conversion where "plaintiff delivers funds to the defendant for a specific purpose only to have the defendant divert those funds to another and different purpose of the defendant." Express Scripts, Inc. v. Walgreens Co., No. 4:08cv1915, 2009 U.S. Dist. LEXIS 113143, at *11-12 (E.D. Mo. Dec. 3, 2009). The Court finds that Plaintiffs' allegation fits within this exception. See FAC, ¶52 ("Plaintiffs placed $415,000 into the account of

5.     Tortious Interference with Business Relationships (Count VI)

"Under Missouri law, the elements of tortious interference with a contract or business expectancy are (1) a contract or valid business expectancy, (2) defendant's knowledge of the contract or relationship, (3) an intentional interference by the defendant inducing or causing a breach of the contract or relationship, (4) absence of justification and (5) damages." Wash Solutions, Inc. v. PDQ Mfg., 395 F.3d 888, 895 (8th Cir. 2005) (citing Serv. Vending Co. v. Wal-Mart Stores, 93 S.W.3d 764, 769 (Mo. Ct. App. 2002)).

Blocker claims that Plaintiffs' tortious interference claim fails because they do not identify the alleged "prospective investors" with which Plaintiffs had a business expectancy. (Memorandum, p. 20). Plaintiffs, however, identify their expectancies with respect to ABI and other investors related to the brewery in Vietnam. (Response, p. 15; FAC, ¶23). Plaintiffs' allegations are sufficient to state a business expectancy.

Blocker also asserts that Plaintiffs do not allege "lack of justification." (Memorandum, p. 21). Blocker claims that he was justified, under Vietnamese law, to fulfill Gannon Brewery's capital obligations by offering unpaid shares to a third party. (Id.) Blocker's arguments, however, are inappropriate at this stage of litigation and ask this Court to address issues beyond the pleadings.

Blocker also asserts that Plaintiffs' claim for tortious interference fails because Defendants had a legitimate interest in investing in Gannon Brewery and no improper means were alleged. In the Complaint, Plaintiffs allege that Blocker interfered with Plaintiffs' business with ABI and investors and threatened to disrupt the business relationships in the brewery project. (FAC, ¶¶23, 24; Response, p. 17). These statements, however, do not address how the means were improper.

Gannon Hong Kong **for the specific purpose** of funding the operations of Gannon Hong Kong and for other legitimate business expenditures.")(emphasis added); FAC, ¶54 (Blocker diverted the funds into his wife's personal bank account "for no legitimate business purpose")).

Plaintiffs admit that "further evidence of the improper means employed by Blocker will be developed in discovery." (Response, p. 17). Plaintiffs have not alleged improper means and their tortious interference claim is dismissed, without prejudice.

6.      Violation of Section 10(b) of the Securities and Exchange Act of 1934 (Count VIII)

Rule 10(b)(5) provides that it is unlawful for any person, directly or indirectly "(a) To employ any device, scheme, or artifice to defraud, (b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." K-Tel Int'l Sec. Litig. v. K-Tel Int'l, 300 F.3d 881, 888 (8th Cir. 2002) (citing 17 C.F.R. § 240.10b-5 (1995)). "In a typical § 10(b) private action a plaintiff must prove (1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc., 552 U.S. 148, 157 (2008) (citing Dura Pharms., Inc. v. Broudo, 544 U.S. 336, 341-342, 125 S. Ct. 1627, 161 L. Ed. 2d 577 (2005)). The complaint must also "'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation . . . is made on information and belief, the complaint shall state with particularity all facts on which the belief is formed.'" K-Tel Int'l Sec. Litig., 300 F.3d at 889 (citing 15 U.S.C. § 78u-4(b)(1)). In addition, "'with respect to each act or omission alleged,'" the complaint must "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" Id. (citing 15 U.S.C. § 78u-4(b)(2)). Rule 10b-

5, however, does not apply extraterritorially.  Morrison v. Nat'l Austl. Bank Ltd., 130 S. Ct. 2869, 2883 (2010).

By Plaintiffs' own admission, their 10(b)(5) claim relates to the sale of Plaintiffs' purported interest in Gannon Brewery in Vietnam.  (Response, pp. 19-21;  FAC, ¶¶80-83).  Accordingly, Plaintiffs' 10(b)(5) claim, which purports to relate to an extraterritorial stock sale, fails as a matter of law.  Morrison v. Nat'l Austl. Bank Ltd., 130 S. Ct. at 2883.

### 7.    Civil Conspiracy (Count IX)

To establish a claim for civil conspiracy, Missouri cases state that the plaintiff must plead sufficient facts to support the following elements: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of minds on the object or course of action; (4) one or more unlawful acts; and, (5) damages." Lyn-Flex West, Inc. v. Dieckhaus, 24 S.W.3d 693, 700 (Mo. Ct. App. 1999); Moses.com Sec., Inc. v. Comprehensive Software Sys., 406 F.3d 1052, 1063 (8th Cir. 2005).

Blocker asserts that Plaintiffs' civil conspiracy claim fails to allege facts supporting an unlawful object to be accomplished by the alleged conspiracy.  (Memorandum, p. 26;  FAC, ¶¶ 87-89).  Blocker also claims that Plaintiffs failed to allege any facts to establish an agreement was entered into between Blocker and the other Defendants to engage in an unlawful objective.  (Memorandum, p. 26).  Blocker states that Plaintiffs' "bald conclusion" that Defendants engaged in the tortious actions "after a meeting of the minds" is insufficient.  (Response, p. 26).  The Court finds that, reading the Complaint as a whole, Blocker alleges that the parties unlawfully conspired to commit the tortious acts.

In addition, Blocker states that Plaintiffs' civil conspiracy claim fails because it is based on the tortious conduct described in the other counts, which Blocker claims fail as a matter of law.  As discussed herein, several of Plaintiffs' tort claims state a claim.  The Court has not dismissed claims

for fraud (with respect to the Capital Call Letter), fiduciary duty, unjust enrichment and conversion. Therefore, the Court denies Blocker's motion to dismiss Plaintiffs' claim for civil conspiracy on this basis.

8.      Declaratory Judgment (Count X)

Plaintiffs seek the Court's declaration that: (a) the Agreement is invalid; (b) the Capital Call of May 4, 2010 is invalid; (c) any transactions related to the Agreement or to the Capital Call are invalid; and (d) the arbitration clause contained in the fraudulent and unauthorized Agreement is invalid and/or unenforceable.  (FAC, ¶94).

Blocker asserts that Plaintiffs' Declaratory Judgment claim should be dismissed because all of the claims relating to the funding of Gannon Brewery fail as a matter of law for the reasons described in his Motion to Dismiss.  If the Court were to grant Blocker's Motion with respect to the other claims, then Blocker asserts that no actual controversy exists between the parties and no harm was suffered by the Plaintiffs with respect to the Agreement.  (Memorandum, p. 28).

As discussed above, the Court is denying some of Blocker's Motion to Dismiss with respect to the Agreement.  Accordingly, the Court also denies Blocker's Motion to Dismiss on this basis.

Blocker also argues that the Declaratory Judgment count should be dismissed because it falls within the arbitration clause of the Agreement.   The Court agrees.  To the extent that Plaintiffs' Declaratory Judgment claim relates to the validity of the Agreement, the Declaratory Judgment claim is dismissed.

9.      Constructive Trust (Count XI)

The law does not recognize constructive trust as an independent cause of action.  Secure Energy, Inc. v. Coal Synthetics, LLC, No. 4:08CV1719, 2010 U.S. Dist. LEXIS 41083, at *10-11 (E.D. Mo. Apr. 27, 2010)(constructive trust is a remedy, not an independent cause of action);

Alliance Communs. Coop., Inc. v. Global Crossing Telcoms., Inc., 663 F. Supp. 2d 807, 839-40, n.19 (D. S.D. 2009); Neher v. eBanker USA.com, Inc., No. 04-0711, 2005 U.S. Dist. LEXIS 33471, at *18 (W.D. Mo. Apr. 1, 2005). Rather, constructive trust is a remedy. Plaintiffs may seek a constructive trust as part of their prayer for relief in another claim, but this remedy cannot stand as a separate cause of action. Accordingly, the Court dismisses this claim.

### D. Standing

Blocker asserts that Gannon International and Gannon Pacific should be dismissed from this action because they lack Article III standing to sue. As the Eighth Circuit articulated,

> "Article III of the United Constitution confines the federal courts to adjudicating actual 'cases and controversies.'" Boyle v. Anderson, 68 F.3d 1093, 1100 (8th Cir. 1995) (citation omitted), cert. denied, 516 U.S. 1173, 134 L. Ed. 2d 214, 116 S. Ct. 1266 (1996). To acquire Article III standing, a plaintiff must have a "personal stake in the outcome of the controversy." Baker v. Carr, 369 U.S. 186, 209, 7 L. Ed. 2d 663, 82 S. Ct. 691 (1962). To satisfy this requirement, the plaintiff must have "a definite and concrete controversy involving adverse legal interests at every stage in the litigation . . . for which the court can grant specific and conclusive relief." Arkansas AFL-CIO v. FCC, 11 F.3d 1430, 1435 (8th Cir. 1992) (citing McFarlin v. Newport Special Sch. Dist., 980 F.2d 1208, 1210 (8th Cir. 1992)).

Potthoff v. Morin, 245 F.3d 710, 715 (8th Cir. 2001).

Blocker claims that Gannon International and Gannon Pacific lack standing to sue because they have not been harmed by the alleged acts of Blocker. Plaintiffs allege claims related to (a) the Capital Call Letter and the Agreement and (b) the transfer of funds from Gannon Hong Kong to Blocker's wife and the former Gannon International CFO. (Memorandum, p. 30). With respect to the former, Blocker states that Gannon Vietnam is the only entity that had a stake in Gannon Brewery and that Gannon International and Gannon Pacific cannot state a claim as mere shareholders of Gannon Vietnam. See Potthoff, 245 F.3d at 716 (applying shareholder standing rule whereby actions to enforce corporate rights or redress injuries to the corporation cannot be maintained by a

stockholder in his own name even though the injury to the corporation may incidentally result in the depreciation or destruction of the value of the stock). With respect to the latter, Blocker states that Gannon Hong Kong was the only entity harmed by Blocker's transfers from its bank account. (Memorandum, p. 30). Furthermore, Blocker claims that the proposed assignment of claims by Gannon Vietnam to Gannon International has no legal effect because the "alleged injured parties (Gannon Vietnam and Gannon Hong Kong) are already parties in the lawsuit and are asserting their purported rights on their own behalf." (Defendant Walter Blocker's Reply in Support of Motion to Dismiss Plaintiffs' First Amended Complaint under Federal Rule 12(b)(6) ("Reply"), Doc. No. 77, p. 20). Thus, according to Blocker, Gannon International cannot bring claims on behalf of Gannon Vietnam because Gannon Vietnam is already asserting its interests in this lawsuit.

In response, Plaintiffs assert that they, especially Gannon International, were lied to by Ignition and Sandalwood "through overt statements and through the omission of material information that Ignition/Sandalwood knew it had to disclose to Gannon International." (Response, p. 27). Plaintiffs claim that the injuries suffered by Gannon International, Gannon Pacific and Gannon Hong Kong are not merely derivative of the injuries suffered by Gannon Vietnam, but that they were "the victims of direct tortious conduct and suffered direct injury." (Response, pp. 27-28). Plaintiffs also state that they were injured by the dilution of their stock in Gannon Brewery because all of the funds invested in Gannon Brewery came directly from Gannon International through its co-Plaintiffs. (Response, p. 28). Finally, Plaintiffs argue that Blocker's standing arguments are mooted by the assignment of Gannon Vietnam's claims to Gannon International. (Response, p. 28 (citing Exhibit 1, Doc. No. 69-1).

Looking solely at the Complaint, the Court finds that all four Plaintiffs have alleged standing. Although Plaintiffs' allegations often are imprecise, Plaintiffs purport to allege torts related to all of

the Plaintiffs. Plaintiffs allege that Gannon Pacific, Gannon Hong Kong and Gannon Vietnam are wholly owned subsidiaries of Gannon International and are completely funded, directed and controlled by Gannon International. (FAC, ¶15). Plaintiffs allege that Blocker is interfering with Plaintiffs' attempts to conduct business with ABI. (Id., ¶¶23, 24). The Complaint alleges that Blocker refused to provide access to the records of Gannon Hong Kong and Gannon Vietnam to Plaintiffs. (Id., ¶¶25, 26). Plaintiffs allege that Blocker breached his fiduciary duties to Plaintiffs by attempting involuntarily to dilute Plaintiffs' interest in Gannon Brewery. (Id., ¶¶35, 36). Plaintiffs allege that Blocker tortiously interfered with their relationships with prospective investors in the Gannon Brewery. (Id., ¶¶71-74). Finally, Plaintiffs seek declaratory relief that Gannon International, Gannon Pacific and Gannon Hong Kong are not parties to the arbitration clause contained in the Agreement and cannot be bound by it. (Id., ¶¶ 90-94).[14]

Based upon these allegations, the Court finds that Plaintiffs have alleged standing for Gannon Pacific and Gannon International. Plaintiffs Gannon Pacific and Gannon International have plead damages other than a derivative claim for compensatory damages based upon economic harm suffered by Gannon Hong Kong and Gannon Vietnam. The Court denies Blocker's motion to dismiss based upon lack of standing.

### E. Arbitration

Blocker argues that the Court should compel the arbitration of all Plaintiffs' claims relating to the Capital Call Letter and the Agreement. (Memorandum, p. 32). The Agreement provides that "[a]ny dispute between the Parties arising out of, or in connection with, the Agreement, including any question regarding its interpretation, existence, validity or termination, shall be referred to and finally

---

[14]In particular, the request for declaratory relief involves Gannon International and Gannon Pacific and provides standing in this lawsuit.

resolved by arbitration in Singapore in accordance with the Arbitration Rules of the Singapore International Arbitration Centre (SIAC Rules) for the time being in force, which rules are deemed to be incorporated by reference in this provision." (Doc. No. 28-5, §16.5.2). The Parties to the Agreement are Sandalwood, Gannon Vietnam, Doan Phuong Ly, Joint Stock Company, and Blocker. (Doc. No. 28-5, pp. 2, 5). Blocker signed the Agreement as the legal representative of Joint Stock Company and Gannon Vietnam. (Doc. No. 28-5, p. 5).

Plaintiffs assert that the arbitration clause is unenforceable and does not preclude adjudication in this Court because (a) only Gannon Vietnam signed the Agreement, (b) the Court "should not compel arbitration when the very making of the agreement to arbitrate is the center of the dispute." (Response, p. 28).

The SIAC Rules provide that "[t]he Tribunal [Arbitrator] shall have the power to rule on its own jurisdiction, including any objections with respect to the existence, termination or validity of the arbitration agreement." (SIAC Rules 2010, Rule 25.2, http://www.siac.org.sg/cms/images/stories/documents/rules/SIAC_Rules_2010-revised_150910_2.pdf) (visited on December 22, 2010). Thus, the fact that Plaintiffs argue that the Agreement is invalid does not bar arbitration of their claims that relate to the Agreement.

Further, the Court agrees that Plaintiffs cannot have it both ways. They cannot allege standing in this suit based upon the torts alleged and the assignment of Gannon Vietnam's claims but assert that they are not subject to the arbitration provision of the Agreement. Moreover, Gannon International, Gannon Pacific and Gannon Hong Kong, as the parent corporations of Gannon Vietnam, are subject to the arbitration provisions entered into by Gannon Vietnam. See J.J. Ryan & Sons, Inc. v. Rhone Poulenc Textile, S.A., 863 F.2d 315, 320-321 (4th Cir. 1988) ("When the charges against a parent company and its subsidiary are based on the same facts and are inherently

inseparable, a court may refer claims against the parent to arbitration even though the parent is not formally a party to the arbitration agreement."). Finally, the arbitrator is the proper judge of whether Gannon International, Gannon Pacific and Gannon Hong Kong are subject to the Agreement.

The Court dismisses Plaintiffs' claims that relate to the Agreement. Plaintiffs' claims for unjust enrichment and conversion are not dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Ignition Capital Partners and Sandalwood Investments Limited's Motion to Dismiss the Amended Complaint Pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(2), or, in the Alternative, to Dismiss in Favor of Arbitration (Doc. No. 53) is **GRANTED**.

**IT IS HEREBY FURTHER ORDERED** that Defendant Walter Blocker's Motion to Dismiss Pursuant to 12(b)(4) and (5) (Doc. No. 56) is **DENIED**.

**IT IS HEREBY FURTHER ORDERED** that Defendant Walter Blocker's Motion to Dismiss Plaintiffs' First Amended Complaint Under Rule 12(b)(6) (Doc. No. 59) is **DENIED**, in part, and **GRANTED**, in part.

Dated this 13th day of January, 2011.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE